## Supreme Court—General Term—Fourth Department.

*November*, 1885.

## PEOPLE *v.* WENTWORTH.

### BIGAMY—EVIDENCE.

Upon a trial for bigamy where the marriage is positively sworn to by one side and denied by the other, either side may put in evidence corroborating circumstances, which must be considered by the jury as bearing upon the credibility of the witnesses and the fact of the marriage. These corroborating circumstances may consist of evidence of cohabitation, treatment and status of prosecutrix in defendant's family, and reputation.

When a question apparently incompetent and immaterial is asked, for the purpose of discrediting a witness, and is objected to on those grounds, to make it admissible the purpose of the question should be stated to the court, and it should be shown how it was material and competent.

A party having evidence stricken out, loses the benefit of his previous exception to its admission.

Where a part only of an answer is irresponsive, a motion should be made specifically to strike out the irresponsive portion.

APPEAL by Delos D. Wentforth, defendant, from a conviction of bigamy in the Court of Sessions of Herkimer county.

In the year 1876 the defendant, who was then about thirty

years old, lived with his parents on a farm in the town of German Flats, Herkimer county, and in December of that year one Mary Sullivan, a young lady to whom defendant had paid some attention, went to the house of defendant's parents, at first apparently as a domestic. After living there about three months, defendant's parents were informed by the defendant and Mary Sullivan that they were married. They then commenced living together as husband and wife, living in the family with defendant's parents, and so continued for about eight years when they parted, Mary going out to work, and defendant remaining at home the most of the time.

In April, 1884, the defendant married one Nettie Armstrong in Madison county, was subsequently arrested in Herkimer county, indicted for bigamy, and in December, 1884, was tried in the Herkimer Sessions, convicted, and sentenced to imprisonment for four years and six months in State prison.

From this conviction the defendant appealed to the General Term.

Upon the trial Mary Sullivan Wentworth was sworn as a witness for the people, and testified that she and the defendant were married at the city of Utica, in the county of Oneida, on or about the 27th day of November, 1876, by a person whom defendant represented to be a justice of the peace; that at first the marriage was purposely kept a secret, but after about three months they announced their marriage and then commenced living together as husband and wife. The defendant was sworn as a witness in his own behalf, and denied the alleged marriage to Mary, but admitted that they cohabited together, and also admitted the last marriage to Nettie Armstrong. To corroborate the evidence of Mary Sullivan, the people proved, over defendant's objection, that the defendant and Mary Sullivan, after 1876, lived and cohabited together as husband and wife; that defendant, while away from home, directed letters to her as his wife; that she was introduced by members of defendant's family in his absence, and also in his presence, as his wife; that she was treated in his family as his wife; that she called his father and mother "father" and "mother;" and that

they were generally reputed in the neighborhood to be husband and wife, &c.

*Amos H. Prescott*, for defendant, appellant.

*A. B. Steele*, district attorney, for the people, respondent.— In civil actions, marriage may be inferred from cohabitation, reception in the family, reputation, &c. Fenton *v.* Reed, 4 *John.* 52; Jackson *v.* Claw, 18 *Id.* 345; Clayton *v.* Wardell, 5 *Barb.* 214; *Court of Appeals*, 4 *Com.* 230; Bissell *v.* Bissell, 55 *Barb.* 325; Rockwell *v.* Tunnicliff, 62 *Id.* 408; O'Gara *v.* Eisenlohr, 28 *N. Y.* 298; Durand *v.* Durand, 2 *Sweeney*, 315; Badger *v.* Badger, 88 *N. Y.* 546; Betsenger *v.* Chapman *et al. Id.* 497. Cohabitation, reputation, &c., are not sufficient evidence in a criminal trial to establish marriage, but are competent in corroboration, after proof of an actual marriage contract. *Whart. Cr. Ev.* 8th ed. §§ 243, 246, 261, 827; *Whar. Cr. Law*, 8th ed. § 1696, &c.; 1 *Russell on Crimes*, 216, 217; Gahagan *v.* People, 1 *Park.* 385; Hayes *v.* People, 5 *Id.* (*S. C.*) 326; 25 *N. Y.* 390; Durand *v.* Durand, *supra;* Clayton *v.* Wardell, *supra.*

An error committed in receiving evidence is cured by striking out the evidence on motion of the appellant. Greenfield *v.* People, 85 *N. Y.* 90; Eggler *v.* People, 56 *Id.* 642; Price *v.* Brown, 98 *Id.* 395.

FOLLETT, J.—December 24, 1884, the defendant was convicted at the Herkimer Sessions of bigamy, and sentenced to imprisonment for four years and six months. Defendant moved for a new trial in the Court of Sessions, which was denied and an exception taken.

The grounds upon which such a motion may be made are enumerated in section 465 of the Code of Criminal Procedure. The record does not disclose the ground or grounds on which the motion was based. Nor does it disclose that an order denying the motion was made or entered. In civil cases an appeal from such a ruling, accompanied by such a record,

brings nothing into this court for review. Ehrman *v.* Rothchild, 23 *Hun,* 273 ; Hinman *v.* Stillwell, 34 *Id.* 178. Section 466 of the Code of Criminal Procedure provides: That a motion for a new trial must be made before judgment. The record states that the motion was made after judgment; but in the next folio it is stated that the motion was made before judgment. Waiving all questions of practice, and assuming that we may consider whether the verdict "is clearly against the evidence," we are of the opinion that the verdict, on the merits, is clearly right, and amply sustained by the evidence.

The defendant admits that April 16, 1884, he married Nettie Armstrong, which fact was sworn to by the clergyman who performed the ceremony. The only disputed question was, whether Mary Sullivan and the defendant intermarried in November, 1876. Under section 715 of the Penal Code, Mary Sullivan Wentworth was sworn in behalf of the people, and testified that she and defendant were married November 27, 1876, at the city of Utica by a justice of the peace, and lived together as husband and wife until January 11, 1884. Defendant denied the marriage, but admmitted that for about eight years they lived in the family with his father and mother, occupying the same bed, and to all outward appearance sustained the relation of husband and wife. Defendant's mother, called in behalf of defendant, testified that in November, 1876, Mary told her they were married, and that thereafter, and until Mary left, in January, 1884, they lived together as husband and wife, and she never suspected they were not until she overheard a conversation between them on the subject on the 27th of December, 1883. During these years defendant, his mother and Mary, had resided on a farm in the town of German Flats. To corroborate the testimony of Mary, several of the neighbors were called, who testified that defendant and Mary had lived together during this period as husband and wife, that she was frequently introduced by defendant as his wife, and went by the name of Mrs. Wentworth. No unprejudiced mind can consider the evidence in this case without coming to the conclusion that the parties were married, as testified by Mary Sullivan Wentworth. There is nothing in the evidence, or conduct of Mary Sullivan

Wentworth, that tends to discredit her testimony, or indicates that she was actuated by ill-will towards her husband, and she was not his prosecutor.

The appeal from the judgment brings up the exceptions taken on the trial. No exception was taken to the charge, and but a single exception to the refusal to charge: The defendant requested the court to charge, "In this case, from the fact that the people claim and prove that a marriage was solemnized in fact, according to the evidence of Mary Sullivan, there is nothing in the evidence for the jury to consider but the evidence relative to the marriage in fact." If this request is understood, the court was asked to charge that the jury should not consider the evidence that defendant and Mary had lived together and treated each other as husband and wife for nearly eight years, or the evidence of the witnesses tending to corroborate the evidence of Mary, but should determine whether they were married or not, solely from the evidence of Mary and the defendant.

It is so clear that this request was properly refused, that to discuss it would be work of supererogation, holding the doctrine of the proposition would necessarily exclude, as incompetent, all evidence tending to corroborate the people's witness. It has been many times held in cases of this kind, and never doubted, that when the marriage is sworn to, and denied, that either side may put in evidence corroborating circumstances, and the jury must consider such circumstances in determining the credibility of the witnesses and the fact.

After Mary left her husband (January 11, 1884) she worked two weeks for Mr. Rafter, and was asked how much she received from him. She answered: "Three dollars per week—six dollars in all." The question was repeated: "How much money did Mr. Rafter pay you?" The people's objection that the evidence called for was incompetent and inadmissible, was sustained, in which there was no error. The question had been fully answered; besides, it was immaterial, unless some discrediting fact was sought for, and if so, the object of the question should have been stated to the court and its materiality made apparent, instead of resting upon the ruling and insinu-

ating on the appeal that there was a discrediting fact connected with the transaction.

William E. Harter was sworn as a witness for the people. He described the situation of the rooms in Utica in which Mary testified she and defendant were married. After describing the rooms in November, 1876, and by whom occupied, he was permitted to testify, over the defendant's objection, that upon returning to the office one evening in November, 1876, he learned that a marriage had taken place there. The defendant's counsel moved to strike the evidence out. The court struck out the evidence of the conversation about the marriage, but did not strike out the evidence describing the rooms, and by whom occupied. The description of the offices and occupants was clearly competent. Assuming that the general objection was sufficient, and that the motion to strike out, without specifying grounds, was sufficient, there was no error.

The appellant insists that the evidence of the conversation about the marriage was illegal and greatly prejudiced the defendant's case. Conceding this to be true, the defendant, by having the evidence stricken out of his own motion, lost the benefit of his previous exception to its admission. Price *v.* Brown, 98 *N. Y.*, 388, 395. Again, after the defendant got the case he examined Robert O. Jones upon the subject of this conversation.

Mary Browning, an aunt of the defendant, to whom defendant introduced Mary as his wife, was, on one occasion, visiting the Wentworth family. She was permitted to testify, over the defendant's objection, that Mary, in the absence of defendant, but in the presence of defendant's mother, showed the room she and defendant occupied, and also that Mary called defendant's parents "father" and "mother," and that they called her "Mary." In this there was no error. It was clearly competent, in corroboration of Mary's evidence, to show her status in the defendant's household. The defendant testified that he and Mary occupied a room and bed together for nearly eight years. So did his mother, who also testified, as defendant's witness, that she supposed they were husband and wife until De-

cember, 1883. No harm was done the defendant by this evidence of Mrs. Browning.

Cora Bliss, a witness for the people, was cross-examined by defendant's counsel, and it was drawn out that the neighbors supposed that defendant and Mary were married, and that she had heard it spoken of frequently in the neighborhood that they were married. None of the answers were objected to as irresponsive to the questions put; and after endeavoring to show that the marriage was talked about by few, it was not error for the court to refuse to strike out the defendant's evidence upon his own motion.

Defendant objected to the evidence of Mrs. Lucinda Bliss that defendant's mother introduced Mary as defendant's wife Neither defendant, his mother, nor any witness sworn by him, claimed that Mary had not, in all respects, been treated during eight years, by defendant and his mother, as defendant's wife. The same remark is applicable to the evidence of Levi Bliss and Herman Bliss. The evidence of the undertaker (Mr. Chattaway) that he had charge of the funeral of defendant's father, and that Mary was designated by defendant as his wife, and rode with him and his mother to the grave, was competent for the purpose of showing her status in the family, to corroborate her, and discredit the defendant.

The evidence of Herman Bliss, which was objected to by the defendant, showing how Mary was treated and by what name called by defendant's mother in defendant's family and house, was not incompetent, for reasons previously given when discussing similar exceptions.

The defendant's counsel asked Amaziah Armstrong (the father of defendant's last wife) this question: "You have been the chief prosecutor in this case, haven't you?" Answer: "Yes, sir, I have been prosecuting, because I have been grossly injured in myself and family." The defendant moved to strike out this answer, specifying no ground, which was refused. Part of the answer was strictly responsive to his question, and if he had desired to have the portion not responsive stricken out, such a motion should have been made upon that ground, and specifically directed to the irresponsive part of the answer.

Permitting the people to recall the defendant and to call other witnesses was a matter which rested in the discretion of the trial court, and the discretion was not abused.

Section 542 of the Code of Criminal Procedure provides: "After hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

- We are unable to find any error which prejudiced the rights of the defendant and calls for a reversal of the judgment.

The judgment of the Court of Sessions of Herkimer county is affirmed, which must be executed by the imprisonment of the defendant according to its terms.

BOARDMAN, J., concurs; HARDIN, P. J., not voting.